UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>KADI ISATU JALLOH,<br>    Defendant. | CASE NO. 5:25-cr-144-KKC-MAS<br><br><br>**OPINION & ORDER** |

This matter is before the Court on the Government's motion to revoke the pretrial release of Defendant Kadi Isatu Jalloh. (R. 32.) Jalloh filed a response. (R. 34.) The Court ordered a motion hearing pursuant to 18 U.S.C. § 3148. (R. 33.) During the hearing, the Court heard from both parties and United States Probation Officer Glen Collins. Following the hearing, the Court granted the motion, noting that a separate opinion would be issued. (R. 35.)

**I. Background**

Jalloh was indicted in the Eastern District of Kentucky on one count of money laundering, in violation of 18 U.S.C. § 1956(h). (R. 1.) After the United States Marshals did not achieve service of summons and Jalloh did not appear for her initial appearance, the Court issued an arrest warrant. (R. 8.) On December 22, 2025, Jalloh was arrested and arraigned in the District of Columbia. (R. 19.) A detention hearing was held before United States Magistrate Judge G. Michael Harvey in the District of Columbia. (*Id.*) Judge Harvey ordered that Jalloh be released on the certain bond conditions, including that she must submit to random drug screens, not travel outside the United States, and verify her address with the United States Probation Office (USPO). (R. 19-1.) Jalloh was also ordered to appear for arraignment in the Eastern District of Kentucky on January 5, 2026. (*Id.*)

At the January 5, 2026 arraignment, United States Magistrate Judge Matthew A. Stinnett in the Eastern District of Kentucky ordered additional pretrial release conditions, on top of those issued by Judge Harvey. (R. 21.) Those conditions include the following:

(1) report to USPO for supervision;

(2) maintain employment;

(3) restrict travel to the Eastern District of Kentucky, the District of Columbia, the Eastern District of Virginia (where Jalloh resides), and the District of Maryland (where Jalloh is employed);

(4) no contact with victims, witnesses, or co-defendants in the case, except in the presence of counsel; and

(5) submit to location monitoring technology by virtual mobile application (SmartLink).

(R. 21.) Jalloh signed a SmartLink participant agreement form, agreeing to "comply with all program rules . . . and with [her] supervising officer's instructions." (R. 36.) The agreement form warned that "[f]ailure to comply with this agreement or with [Jalloh's] supervising officer's instructions will be considered a violation of [Jalloh's] supervision and may result in adverse action." (*Id.*) Jalloh agreed to "acknowledge and follow any virtual mobile application prompts" and contact her officer as soon as possible if she had any issues. (*Id.*) She also agreed to be subject to random "check-ins" and report missed or late "check-ins" to her officer, as well as contact her officer immediately if she experienced any problems with SmartLink. (*Id.*)

Since then, Jalloh has repeatedly violated her bond conditions. (*See* R. 32 at 2.) On Friday, January 9, 2026, Jalloh failed to report for drug testing, but reported on the following Monday, January 12, 2026.

Then, on Tuesday, January 20, 2026, Jalloh failed to report for drug testing. She explained to her supervising probation officer that she could not report due to a work scheduling conflict.

The probation officer instructed Jalloh to report the next day, but Jalloh did not appear until Thursday, January 22, 2026. The day after she finally reported for drug testing, Jalloh's probation officer requested that Jalloh provide her school and work schedules by Friday, January 30, 2026, presumably to avoid further scheduling conflicts.

Next, Jalloh failed to report for drug testing on Thursday, January 29, 2026. This time, Jalloh explained that she was experiencing car trouble due to a snowstorm. The probation officer told her to report the next day but, according to the USPO, Jalloh failed to report or provide an explanation for her absence.

Jalloh also failed to submit her school and work schedules to her probation officer by the requested date, but did eventually provide the schedules on Tuesday, February 3, 2026 after follow-up by her probation officer.

Between Sunday, February 8, 2026 and Wednesday, February 11, 2026, Jalloh did not check in at all and was completely unresponsive to her probation officer. When she did contact her probation officer, Jalloh explained that she had been sick with the flu and provided medical records showing that she tested positive for the flu on February 9, 2026.

On February 11, 2026, the Government filed the present motion for revocation of the pretrial release order because it believes that Jalloh has not complied with her bond conditions. (R. 32.) Jalloh responded. (R. 34.) The Court scheduled a motion hearing for February 18, 2026. (R. 33.)

At the hearing, the parties presented their arguments and United States Probation Officer Glen Collins testified. Notably, Collins testified that that the preliminary results from Jalloh's most recent drug test has come back positive for cocaine. Jalloh also made a brief statement.

3

## II. Standard of Review

When a defendant is ordered to be released by a magistrate judge, "an attorney for the government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." 18 U.S.C. § 3145. A defendant may be held pending the resolution of her case only if a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). "The default position . . . is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010).

A defendant who violates the conditions of release "is subject to revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148(a). The Court must enter an order of revocation and detention if, after a hearing, it finds the following:

(1) (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or

(B) clear and convincing evidence that the person has violated any other condition of release; and

(2) (A) based on the factors set forth in 18 U.S.C. § 3142(g), there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or

(B) the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148(b).

## III. Analysis

Jalloh does not deny that she has violated the conditions of her release but, instead, offers explanations and excuses for her noncompliance. For instance, she experienced trouble using

4

SmartLink, she had work scheduling issues, she had car trouble due to a snowstorm, and she had the flu. Still, Jalloh contends that she did check in *eventually* and always stayed within the travel restricted area. Jalloh argues that "the level of monitoring set to date does not appear to have been the intent of the [sic] any Court that has set bond conditions to date." (R. 34 at 5-6.) Instead of revoking her pretrial release, Jalloh requests that the Court adjust the conditions to use an ankle monitoring system in place of SmartLink.

Jalloh is subject to revocation of release, pursuant to 18 U.S.C. § 3148.

As to the factors set forth in § 3148(b)(1), there is clear and convincing evidence that Jalloh has violated her conditions of release. Jalloh does not deny that she has repeatedly failed to report to the USPO for drug testing and failed to submit to location monitoring technology through the SmartLink application. Additionally, the preliminary results from her most-recent drug test shows that she tested positive for cocaine. This establishes probable cause that Jalloh has committed a crime. *See, e.g., Green v. Webster*, 359 F. App'x 249, 251 (2d Cir. 2010) ("A reasonably trustworthy field test that returns a 'positive' result for the presence of cocaine is a sufficient basis for probable cause."); *United States v. Crespo*, 868 F.Supp. 79, 85 (M.D. Pa. 1994) ("[T]he field test taken at the scene proved positive for cocaine. This, in and of itself, constitutes probable cause to arrest."). Accordingly, both factors set forth in § 3148(b)(1) are satisfied.

The factors set forth in § 3148(b)(2) are similarly satisfied. Jalloh is unlikely to abide by any condition or combination of conditions of release. Jalloh signed an agreement to comply with the bond conditions in place, which are arguably the least restrictive bond conditions she could have, yet Jalloh has regularly failed to comply with these conditions in a timely manner. She repeatedly failed to report for drug testing. She also repeatedly failed to timely communicate with her probation officer about her absence, her troubles with SmartLink, her work schedule, and her

illness. Despite many chances from the probation officer, Jalloh has not complied with the conditions of her release or her SmartLink participant agreement. This failure to timely report to drug testing and communicate with her probation officer, two of most basic conditions of release, indicates that she is unlikely to abide by any condition of combination of conditions of release.

Additionally, Jalloh's sudden and unexplained absences indicate that Jalloh's risk of flight is high. While Jalloh eventually explained the reasons behind her delays, she should have proactively communicated issues with her probation officer or otherwise avoid noncompliance. An ankle monitor would not be an appropriate alternative because Jalloh's failure to check SmartLink indicates that she may fail to charge her ankle monitor. A monitoring tracking device would not resolve the concerns around Jalloh's lack of communication and risk of flight.

More troubling is Jalloh's failure to comply with drug testing. This indicates a danger to the safety of the community, and an indication that Jalloh not only defied a condition of her release, but committed a crime while on release. Accordingly, the factors set forth in § 3148(b)(2) are satisfied.

Having found § 3148(b) satisfied, the Court must enter an order of revocation and detention.

### IV. Order

Accordingly, pursuant to 18 U.S.C. § 3148, the Court hereby **ORDERS** that the Government's motion to revoke bond (R. 32) is **GRANTED**. Jalloh is remanded to the custody of the United States Marshall.

This 19th day of February, 2026.



**Signed By:**

*Karen K. Caldwell* *KKC*

**United States District Judge**